IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALO, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>   Defendants. | Case No. 25-cv-14879 |

## COMPLAINT

Plaintiff ALO, LLC ("Plaintiff" or "Alo") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Alo's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Alo substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Alo to combat e-commerce store operators who trade upon Alo's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Alo's federally registered trademarks (the "Counterfeit Alo Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Alo Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Alo is forced to file this action to combat Defendants' counterfeiting of its registered Alo trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Alo Products over the Internet. Alo has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Alo is a limited liability company organized and existing under the laws of California with an office and principal place of business at 9830 Wilshire Blvd., Beverly Hills, California.

5. Founded in 2007 by Marco DeGeorge and Danny Harris, Alo is a yoga-inspired premium apparel company that creates technologically advanced and unique yoga apparel and accessories. Alo sells many high-quality products, including, but not limited to, clothing and apparel such as shirts, jackets, sweat pants, yoga pants, tank tops, sweatshirts, sports bras, shorts, caps, shoes, and headbands, as well as products other than clothing such as yoga mats, bags, skincare, haircare, body care, and accessories, and also provides branded retail store services, including over the Internet, to carefully control customer experiences and further enhance the appeal of the Alo brand (these and other genuine Alo branded products are collectively referred to herein as the "Alo Products"). While Alo has its roots in yoga, Alo Products are increasingly used for other athletic and casual lifestyle pursuits, such as running, tennis, basketball, and general fitness. Alo has partnered with famous athletes, celebrities, and influencers to enhance Alo brand awareness. Some of its famous campaigns include Kendall Jenner, Jimmy Butler, Joe Burrow, and Jisoo. Alo Products takes the style of the street into the studio, integrating high-performance functionality with fashion forward design. Alo's history of combining performance and style distinctly positions Alo to address the needs of athletes, as well as a growing core of consumers who desire everyday casual wear that is consistent with their active lifestyles.

6. Alo Products have become enormously popular and even iconic, driven by Alo's quality standards and innovative design. A special feature of the brand is the use of high-quality

materials that are not only durable but also environmentally friendly. Alo focuses on sustainable production processes and ensures that its products are manufactured under fair working conditions. Among the purchasing public, genuine Alo Products are instantly recognizable as such. In the United States and around the world, the Alo brand has come to symbolize high quality.

7. The Alo brand is very passionate about spreading awareness of yoga and wellness. Its presence in the yoga community and popularity on social media catapulted the Alo brand. Alo has become one of the leading premium athleisurewear brands in United States and around the world. In 2019, Alo started its foundation "ALO Gives" which provides free, video-based content designed to bring the benefits of wellness to children everywhere incorporating yoga and meditation. Alo also provides a subscription service for on-demand wellness classes through its ALO Wellness Club platform and app.

8. Alo Products are sold exclusively through its distinctive retail stores, including its ALO Chicago store located at 717 N Michigan Ave #100, Chicago, IL 60611, store website, and authorized retailers online. Alo has over 130 stores located in the United States and countries around the world. Alo provides a unique experience at many of its stores, often referred to as "sanctuaries," by providing yoga studios, workshops, and community classes.

9. Providing genuine Alo branded retail store services over the Internet to sell genuine Alo Products is an important part of Alo's business strategy. Since 2007, Alo has operated a website at www.aloyoga.com where it promotes and sells genuine Alo Products. Sales of Alo Products via the aloyoga.com website are significant. The aloyoga.com website features proprietary content, images and designs exclusive to Alo.

10. Alo's trademarks are critical to its business. Alo is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill

4

among the public. Alo has used its trademarks (collectively, the "ALO Trademarks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services, and online e-commerce. Alo Products always include at least one of the ALO Trademarks. Alo incorporates a variety of distinctive marks in its various Alo Products. Consequently, the United States Patent and Trademark Office has granted Alo multiple federal registrations for the ALO Trademarks. Alo uses the ALO Trademarks in connection with the marketing of its Alo Products. The ALO Trademarks, including, but not limited to the registered trademarks listed below, are famous and valuable assets of Alo.

| Registration No. | Trademark |
|---|---|
| 3,875,869 | ALO |
| 5,172,309 | ALO |
| 7,388,807 | ALO |
| 7,804,231 | ALO |
| 7,739,309 | ALO |
| 6,180,601 | AIRBRUSH |
| 6,234,205 | AIRLIFT |
| 6,137,833 | ALOSOFT |
| 7,680,894 | ALO GLOW SYSTEM |
| 6,190,196 | ALO MOVES |
| 4,519,311 | ALO SPORT |
| 5,172,308 | ALO YOGA |
| 7,804,336 | ALO X 01 CLASSIC |
| 7,804,773 | ALO STACKABLE WELLNESS |
| 7,552,862 | AMLA-POWERED, CLEAN BEAUTY |
| 5,848,225 | GODDESS |
| 5,456,095 | GODDESS LEGGING |
| 6,356,336 | RIPPED WARRIOR |
| 6,205,356 | YOGA TO THE WORLD |

11. The above U.S. registrations for the ALO Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the ALO Trademarks constitute *prima facie* evidence of their validity and of Alo's exclusive right to use the ALO Trademarks pursuant to 15 U.S.C. § 1057(b). The ALO Trademarks have been used exclusively and continuously by Alo, and have never been abandoned. Attached hereto as

**Exhibit 1** are true and correct copies of the United States Registration Certificates for the ALO Trademarks included in the above table.

12. The ALO Trademarks are exclusive to Alo and are displayed extensively on Alo Products and in Alo's marketing and promotional materials. Alo Products have been among the most popular athletic and yoga apparel in the world and have been extensively promoted at great expense. In fact, Alo expends millions of dollars annually promoting and marketing the ALO Trademarks. Alo Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the ALO name and the ALO Trademarks have become famous throughout the United States.

13. The ALO Trademarks are distinctive when applied to Alo Products, signifying to the purchaser that the products come from Alo and are consistent with Alo's quality standards. Whether Alo manufactures the products itself or licenses others to do so, Alo has ensured that products bearing the ALO Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the ALO Trademarks is consistent with the highest quality standards. The ALO Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the ALO Trademarks is of incalculable and inestimable value to Alo.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Alo. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions

or redistributes from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Alo to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Alo will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the Alo brand has resulted in significant counterfeiting of the ALO Trademarks. Consequently, Alo has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Alo has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Alo Products on online marketplace platforms such as Alibaba, Amazon, Walmart, eBay, Temu, and PayPal, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic

Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "significantly enhanced vetting of third-party sellers" is necessary.

[5] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.

[6] *Id*. at 39.

[7] Chow, *supra* note 4, at 186-87.

U.S. bank accounts and, on information and belief, have sold Counterfeit Alo Products to residents of Illinois. Screenshots evidencing Defendants' infringing activity are attached as **Exhibit 2**.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from Alo's website or another authorized retailer. Alo has not licensed or authorized Defendants to use any of the ALO Trademarks, and none of the Defendants are authorized retailers of genuine Alo Products.

20. Many Defendants also deceive unknowing consumers by using the ALO Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Alo products. Other e-commerce stores operating under the Seller Aliases omit using the ALO Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Alo Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Alo Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

24. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Alo's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Alo. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move

funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendants are working to knowingly and willfully, import, distribute, offer for sale, and sell Counterfeit Alo Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Alo, have knowingly and willfully used and continue to use the ALO Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Alo Products into the United States and Illinois over the Internet.

27. Defendants' unauthorized use of the ALO Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Alo Products, including the sale of Counterfeit Alo Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Alo.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Alo hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered ALO Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The ALO Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Alo Products offered, sold or marketed under the ALO Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the ALO Trademarks without Alo's permission.

31. Alo is the exclusive owner of the ALO Trademarks. Alo's United States Registrations for the ALO Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Alo's rights in the ALO Trademarks, and are willfully infringing and intentionally using counterfeits of the ALO Trademarks. Defendants' willful, intentional and unauthorized use of the ALO Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Alo Products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Alo has no adequate remedy at law, and if Defendants' actions are not enjoined, Alo will continue to suffer irreparable harm to its reputation and the goodwill of its well-known ALO Trademarks.

34. The injuries and damages sustained by Alo have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Alo Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

35. Alo hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Alo Products has created and is creating a likelihood of confusion, mistake, and deception among the

12

general public as to the affiliation, connection, or association with Alo or the origin, sponsorship, or approval of Defendants' Counterfeit Alo Products by Alo.

37. By using the ALO Trademarks in connection with the sale of Counterfeit Alo Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Alo Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Alo Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. Alo has no adequate remedy at law and, if Defendants' actions are not enjoined, Alo will continue to suffer irreparable harm to its reputation and the goodwill of its Alo brand.

**PRAYER FOR RELIEF**

WHEREFORE, Alo prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the ALO Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Alo product or is not authorized by Alo to be sold in connection with the ALO Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Alo product or any other product produced by Alo that is not Alo's or not produced under the authorization, control, or supervision of Alo and approved by Alo for sale under the ALO Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Alo Products are those sold under the authorization, control, or supervision of Alo, or are sponsored by, approved by, or otherwise connected with Alo;

    d. further infringing the ALO Trademarks and damaging Alo's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Alo, nor authorized by Alo to be sold or offered for sale, and which bear any of Alo's trademarks, including the ALO Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Alo's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Alibaba, Amazon, Walmart, Temu, eBay, and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the ALO Trademarks;

3) That Defendants account for and pay to Alo all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ALO Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Alo be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ALO Trademarks;

5) That Alo be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 9th day of December 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Hannah E. Dawson
Greer, Burns & Crain, Ltd.
200 W. Madison St. Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law
hdawson@gbc.law

*Counsel for Plaintiff ALO, LLC*